UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X
**A.V.**

        against

**SECOND
AMENDED COMPLAINT**
Civil Action No:
25-CV-4128(NJC)(LGD)

**THE NEW YORK STATE BOARD OF LAW EXAMINERS**;
**CARMEN BEAUCHAMP CIPARICK**, in her official capacity
as Chair, New York State Board of Law Examiners; **JOHN J.
MCALARY**, in his official capacity as Executive Director, New
York State Board of Law Examiners; **JESSICA A. MCCLUNG**,
in her official capacity as Deputy Executive Director, New York
State Board of Law Examiners; **BRYAN R. WILLIAMS**, in
his official capacity as a Member, New York State Board of Law
Examiners; **MICHAEL COLODNER**, in his official capacity
as a Member, New York State Board of Law Examiners;
**VICTORIA A. GRAFFEO**, in her official capacity as a Member,
New York State Board of Law Examiners; **CAROL C. VILLEGAS**,
in her official capacity as a Member, New York State Board of Law
Examiners; **LAWRENCE LEWANDOWSKI**, in his official
capacity as a Consultant, New York State Board of Law Examiners,
and as an individual
_____X
STATE OF NEW YORK
COUNTY OF NASSAU SS.:


## I.  Introduction

1. Plaintiff commences this action to challenge the actions Defendants have taken in
violation of the Americans with Disabilities Act ("ADA"), the Civil Rights Act of 1964,
the New York State Constitution, and the United States Constitution.

2. As set forth below, Defendants' actions and decisions are in violation of applicable law.

## II. Parties

3. Plaintiff applied for disability accommodations for the New York Law Exam ("NYLE") and July 2026 New York Bar Exam ("Bar Exam").

4. The New York State Board of Law Examiners ("BOLE" or "the Board") illegally, erroneously, improperly, and arbitrarily and capriciously denied the above mentioned accommodation request and failed to provide an adequate appeal process or additional level of review; is continuing to deprive and threatens to continue to deprive Plaintiff of her statutory and constitutional rights by refusing to administer the exams with her necessary accommodations.

5. John J. McAlary is the Executive Director of BOLE.

6. Jessica A. McClung is the Deputy Executive Director of BOLE, who Plaintiff has corresponded with regarding this matter.

7. Carmen Beauchamp Ciparick is the Chair of BOLE.

8. Bryan R. Williams is a board member of BOLE.

9. Michael Colodner is a board member of BOLE.

10. Carol C. Villegas is a board member of BOLE.

11. Lawrence Lewandowski, a Consultant procured by BOLE ("the Board's Consultant") reviewed Plaintiff's application, and made the recommendation to deny her request for accommodations that BOLE upheld. BOLE continues to deprive Plaintiff of the opportunity to take the exam, and certainly threatens to do so in the future, on the basis of Lewandowski's determination.


## III. Jurisdiction and Venue

12. This Court has subject matter jurisdiction over this proceeding against BOLE pursuant to 28 U.S.C. § 1331 as it arises out of claims asserting rights provided under the Americans with Disabilities Act ("ADA"), a federal statute, as well as the United States Constitution.

13. Further, this Court has subject matter jurisdiction over related non-federal claims part of this same case or controversy, pursuant to 28 U.S.C. § 1367.

14. Further, this Court has subject matter jurisdiction to issue a declaratory judgment, pursuant to 28 U.S.C. § 2201.

15. Further, this Court has jurisdiction to provide injunctive relief for claims arising under the ADA, pursuant to 42 U.S.C. § 12188(a)(2).

16. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)-(2) and (c)(2) because Plaintiff resides in this District and has suffered, and continues to suffer, consequences of Defendants' discriminatory actions in this District.

### IV.     Factual and Procedural Background

A.   <u>Background</u>

17. Plaintiff, 24 years old, was diagnosed with a mental impairment, Generalized Anxiety Disorder ("GAD") and has consistently received accommodations, including 1.5x time for exams and a reduced distraction setting, throughout her undergraduate studies, law school, on the LSAT and on the Multistate Professional Responsibility Exam ("MPRE").

18. Plaintiff's GAD substantially limits her major life activities, including but not limited to: eating, sleeping, caring for herself, learning, working, socializing, focusing, managing time, attending classes, completing coursework, functioning in high-stakes time-pressured settings, and test-taking.

19. Plaintiff is unable to perform these activities that the average person in the general population can perform. Plaintiff submitted evidence of this in her documentation [Affidavit of A.V., Exhibits B–J].

20. Specifically, Plaintiff experiences substantial limitations in processing and responding to sensory input and managing time, especially under time pressure, as compared with members of the general population.

21. Plaintiff's GAD accordingly constitutes a "disability" within the meaning of the ADA.

22. Plaintiff is a third year law student who prepared to take the NYLE on September 18, 2025 but was inhibited from doing so due to her request for accommodations being denied by Defendants. She plans to complete the exam prior to her anticipated graduation in May 2026, to be followed by the bar exam in July of 2026.

23. Both of these examinations, in addition to the MPRE, are necessary prerequisites for admission to practice law in New York State.

24. On April 11, 2025, Plaintiff submitted an application to BOLE requesting 50% (1.5x) extended time and a distraction-reduced setting to accommodate her disability of GAD.

25. Defendants routinely provide Plaintiff's requested accommodations to other individuals with disabilities, and such accommodations are therefore not a fundamental alteration of either exam.

26. Plaintiff's request for accommodations was therefore reasonable within the meaning of the ADA and thus constituted a request for a reasonable accommodation under the ADA.

27. Defendants have failed, and continue to fail to provide Plaintiff with an individualized assessment as to whether her requested accommodations are reasonable for her.

28. Plaintiff submitted this application prior to the June 20, 2025 deadline to apply for accommodations for the September 18 NYLE.

29. The submitted documentation included:
    ○ Personal Statement [Affidavit of A.V., Exhibit B]
    ○ Letter from Dr. Jane Serio (2025) [Affidavit of A.V., Exhibit C]
    ○ Psychological report from Dr. Susan Gaylord (2020) [Affidavit of A.V., Exhibit D]
    ○ Proof of accommodations during undergraduate studies and undergraduate transcripts (2020 - 2023) [Affidavit of A.V., Exhibit E]
    ○ Proof of accommodations in law school and law school transcripts (2023 - present) [Affidavit of A.V., Exhibit F]
    ○ Proof of accommodations on the MPRE and MPRE score (2024) [Affidavit of A.V., Exhibit G]
    ○ Proof of accommodations on the LSAT and LSAT score from (2022) [Affidavit of A.V., Exhibit H]
    ○ SAT scores from 2018, prior to Plaintiff's diagnosis of GAD [Affidavit of A.V., Exhibit I]
    ○ High school transcripts (2015 - 2019), prior to Plaintiff's diagnosis of GAD [Affidavit of A.V., Exhibit J]

30. Plaintiff provided substantially more documentation than required for a reasonable accommodation request under the ADA.

**B.** <u>BOLE's Undue Delay in Rendering a Determination on Plaintiff's Application for 1.5x Time</u>

31. Plaintiff attempted to follow up with BOLE via telephone on June 2, 2025, and indicated that she had submitted her accommodation application in April, and had not yet heard back, and was concerned because the deadline to submit additional documentation was coming up.

32. Accordingly, Plaintiff asked if BOLE had reviewed her application, and if anything else needed to be submitted.

33. The BOLE representative on the phone replied "not, not at the moment, yet, we have the exam coming up in July, so we'll get to those first, and then, like it says, it'll be in due course."

34. Plaintiff responded by asking when the deadline was to submit additional documentation.

35. The BOLE representative responded by informing Plaintiff that the deadline for July 2026 was March 31, 2026.

36. Plaintiff responded by informing the BOLE representative that she intended to take the September 2025 NYLE.

37. The BOLE representative responded that Plaintiff "would get a response sometime before that exam."

38. As this did not answer the question, Plaintiff again asked when the deadline was to submit additional documentation for the NYLE.

39. Plaintiff was then placed on hold for several minutes.

40. After the several minute hold, the representative stated "if we already needed additional documents, you would've already been notified."

41. Plaintiff responded by saying, "so, does that mean I'm approved?"

42. The BOLE representative responded by stating, in a condescending tone,

> you're not, no you're not *approved*, it says in due course. Generally what happens is when you apply for the exam, um, after, someone will look at it and see if you're missing anything for us to do your application. So as of right now, we have everything we need to do the review.

43. In reality, what BOLE's representative had actually communicated to Plaintiff, is that BOLE had everything it needed to *deny* Plaintiff's application.

44. Plaintiff responded by stating that she had seen that the deadline was June 20, and that if additional documentation was in fact needed by BOLE, it must have been submitted by that date.

45. BOLE's representative again stated "*we don't need any additional documents.*"

46. Plaintiff yet again responded by clarifying that she meant if additional documentation was needed "following [BOLE's] review of [her] application."

47. BOLE's representative stated, "what happens is, is, you apply for the accommodations, right, and then someone will look at it here in the accommodations department, to see if you are missing anything for the review of whatever your disability is - to see if we're missing something. That was already done. We're not missing any documents. So you're all set for us to make that determination sometime before that exam."

48. Plaintiff responded by asking "if I'm denied, will I have the opp-" – and was then interrupted by the representative, who stated, "then we will give you time to appeal it if you're denied."

49. Plaintiff responded by asking if she would still be able to take the exam in the same testing cycle if denied.

50. BOLE's representative told Plaintiff that she would be given "enough time to appeal it if [she was] denied accommodations" – but could not give a timeline.

51. BOLE's representative stated,

> the only thing I can tell you is due course. You just have to wait for a determination. And right now, we'll not doing determinations for that it- well, you know, it will be before that exam at some point, but I don't know when exactly.

52. Plaintiff responded that "due course" did not actually provide her with any guidance, and she did not want to start preparing for the exam if she was going to be denied accommodations.

53. BOLE's representative responded by stating that she would have the chance to appeal it if she was denied.

54. BOLE's representative also stated to Plaintiff that "in the meantime, I mean, you can – you do realize that you still have to complete the New York Law Course videos and sign up before August 19."

55. The New York Law Course is a mandatory prerequisite to registering for the NYLE, which consists of 17+ hours of videos, in addition to simulated questions (excluding additional necessary time for note-taking, rewinding, or mandatory restarts after incorrect selections on answer choices).

56. Plaintiff responded that she was aware – and that she did not want to start the course and sign up for the exam if she ultimately would be denied accommodations.

57. BOLE's representative responded, "you're not paying any fee, so you still have to complete that by the deadline."

58. While BOLE's representative's statement may have been true with respect to registration for the NYLE with *BOLE*, the representative conveniently failed to mention that there is still a registration fee that must be paid to *ExamSoft,* with a deadline of September 11, 2025.

59. The existence of such a registration fee is evidenced by the email that Plaintiff received from BOLE on August 28, 2025, (*see* Affidavit of A.V., Exhibit N) which stated:

> While you have timely registered with the Board to take the September 18, 2025 New York Law Exam (NYLE), you must now strictly adhere to all deadlines and procedures below to complete the required registration steps with ExamSoft (that is, you MUST personally and timely complete all required registration steps). The "Pre-Exam" and "Exam Day" deadlines below cannot and WILL NOT BE EXTENDED FOR ANY REASON. **You are highly encouraged NOT to wait until the last minute in taking any of the required steps below or in contacting ExamSoft in the event of a technical problem. <u>The non-refundable ExamSoft fee to take the NYLE is $29.</u>**
>
> **<u>(emphasis added).</u>**

    C. <u>BOLE's Denial of Plaintiff's Application for 1.5x Time</u>

60. On August 11, 2025, exactly four (4) months later, and only a week before the NYLE registration deadline, Plaintiff was informed that she had been denied accommodations for the NYLE and bar exam. *See* Affidavit of A.V., Exhibit K.

61. The denial letter asserted that the Board had Plaintiff's

> application, including all supporting documentation, evaluated by an expert consultant with comprehensive training and experience in a field related to [her] condition.

*See* Affidavit of A.V., Exhibit K

62. However, BOLE failed to provide the name or qualifications of the alleged "expert consultant" that it assigned the task of reviewing Plaintiff's application.

63. Subsequently, BOLE refused to disclose this information to Plaintiff, and denied her request for such information pursuant to New York's Freedom of Information Law ("FOIL") and Personal Privacy Protection Law ("PPPL").

64. Each reason provided in the denial letter was discriminatory, in violation of the ADA, and many were also based on the Consultant's factual misstatements.

65. The Board's Consultant asserted that the documentation that Plaintiff submitted with her application "fails to establish an impairment that substantially limits a major life activity as compared to most people. In view of the lack of evidence, the Board must deny your application."

66. The Board's Consultant erroneously applied an outdated, legally incorrect standard for the definition of "disability" under the ADA that blatantly disregards the ADA Amendments Act of 2008, which greatly expanded the definition of disability. *See* Public Law 110-325, § 2(b)(5).

67. The Board's Consultant relied on Plaintiff's lack of accommodations in the past, prior to her diagnosis in 2020, in support of its determination denying Plaintiff's request for accommodations.

68. The Board's Consultant stated that

> There are no childhood or K-12 school records that indicate a diagnosis of GAD or need for special services.

*See* Affidavit of A.V., Exhibit K.

69. In making this assertion, the Board's Consultant disregarded the plethora of information in Plaintiff's submitted documentation that indicate symptoms of GAD present throughout childhood; and also disregarded the ADA doctrine that a lack of history of accommodations does not support denying a current request for accommodations. *See Bartlett v. New York State Board of Law Examiners*, 156 F.3d 321, 326 (2nd Cir. 1998).

70. The Board's Consultant gave absolutely no weight to the fact that Plaintiff has received the same accommodations throughout her undergraduate studies, law school, on the LSAT, and on the MPRE.

71. Further, the Board's Consultant relied on the assertion that many other individuals were also diagnosed with the same disability during the same three year period as Plaintiff.

72. Notably, the Consultant did not provide a citation for the statistic cited.

73. The Consultant's reliance on this assertion was in blatant disregard of, and in violation of, the ADA's requirement that the Consultant undertake an individualized assessment of Plaintiff.

74. Specifically, the Board's Consultant stated

> The incidence of anxiety disorders increased by 134% between 2019 and 2021, and it is particularly high among ***females***.

*See* Affidavit of A.V., Exhibit K (***emphasis added***).

75. The Board's Consultant provided no explanation or justification as to why a sex-based distinction was made.

76. The Board's Consultant asserted that

> Research shows that anxiety has a small correlation with actual test performance. Some people perform better, some worse, and some see no effect due to anxiety. This is why it is important to examine objective performances of reading, writing, speed, attention, intelligence, and so forth, to determine if a disorder such as anxiety has a negative effect on some area of test performance.

*See* Affidavit of A.V., Exhibit K.

77. The Board's Consultant, however, ignored the plethora of evidence, including objective evaluation of performance on the measures listed, that strongly indicated that Plaintiff's GAD has had substantial negative effects on several areas of test performance.

D. <u>Procedural Difficulties Experienced by Plaintiff in Submitting Her Appeal of her Denial</u>

78. Plaintiff was shocked and horrified that BOLE's Consultant disregarded the majority of the documentation that BOLE required her to submit, particularly her emotionally-sensitive personal statement, and in doing so, determined that she was not disabled.

79. Plaintiff was especially shocked, and deeply offended, that in 2025, BOLE's Consultant relied on a sex-based stereotype as the basis for rejecting the accommodation recommendations of her treating professionals. Her diagnosed disability was minimized due to the fact that she was born female. Plaintiff was even more shocked that BOLE would actually uphold such an ignorant and discriminatory determination by its Consultant.

80. As the Board's rules (22 NYCRR 6000.7(e)) require that appeals be submitted within fourteen (14) days, Plaintiff experienced substantially exacerbated anxiety, and related severe emotional distress, as she frantically contemplated whether and to what extent her family's vacation activity schedule could be rearranged so that she could work on her appeal, all while in a foreign country.

81. Additionally, as Rule 6000.7(e) requires that appeals be notarized and physically mailed, Plaintiff frantically researched the process for having a document notarized in a foreign country. Plaintiff would have been required to drive to another city with an American embassy, over an hour away, in order to get anything notarized. Additionally, Plaintiff would have had to incur substantial undue expenses in international, expedited mailing costs.

82. Ultimately, Plaintiff was not able to mail a completed, notarized appeal to BOLE until August 19, 2025, shortly after she returned back from her trip – though, still within BOLE's 14 day deadline. *See* Affidavit of A.V., Exhibit L.

83. After extensive, unsuccessful attempts of Plaintiff to obtain the status of her appeal, BOLE finally issued a determination on Plaintiff's appeal on September 2, 2025, sixteen (16) days prior to the NYLE – four (4) days *after* BOLE's own twenty (20) day deadline that it set for itself. *See* Paragraphs 90-96.

E. BOLE's Undue Delay in Rendering a Determination on Plaintiff's Appeal of Her Denial

   *1. The August 28 Phone Call*

84. On August 28, 2025, 21 days prior to the exam, Plaintiff called BOLE to request the status of her appeal.

85. On this call, Plaintiff stated to the BOLE representative:

> I received a denial for my accommodations, and I had submitted my appeal. I know now it's 21 days before the exam and I still haven't heard back anything regarding my appeal.

86. Approximately 40 seconds later, the representative replied,

> I don't see any update. Nothing has been emailed yet, but we do ask that you continue to just be patient, and we will get that determination to you as soon as we are able to in due course.

87. Plaintiff replied,

> I know, but "in due course" really means nothing. I mean, listen, it's like, extremely close to the exam day and I still haven't heard anything back. Is there anyone like higher up, like can I talk to Jessica [McClung], is she in?

88. The representative stated,

> There - there - it - it's really just a matter of, you know, giving us time to review your appeal. We just received your appeal on the 19th. That wasn't that long ago

and we need time to review it and when a decision has been made you will get an email.[1]

89. Plaintiff replied to the representative,

I understand, but I need to speak to someone higher up because if I don't have enough time to seek judicial intervention, like, I'm screwed.

90. The representative, apparently oblivious to the concept of litigation, incorrectly replied,

Well, an appeal, there – if an appeal is denied there's no further action. You - you no longer have – you can't appeal an appeal.

91. Plaintiff stated in response,

I understand, but I can go to *court* and seek judicial intervention, so that's why I would like to speak to Jessica if she's there.

92. The representative replied,

I am not sure if she's available, hold on, please.

93. Plaintiff was then placed on hold for just over 90 seconds, before she was told,

Jessica is not available, but I am able to [] transfer your call and you're encouraged to leave a voicemail for her.

94. In response, Plaintiff asked, "Is anyone else currently available?"

---

[1] Notably, the reason my appeal was submitted August 19 is because I did not receive a determination on my initial application until August 11, despite having submitted my application on April 11.

95. The representative interrupted Plaintiff, repeatedly saying "no, no, no." and that "there is no one else available." Plaintiff then asked, "Is John McAlary there?"

96. The representative replied, "John is not in the office." Plaintiff then asked, "So there's nobody higher up that's available to speak to me?"

97. The representative replied,

> Jessica and will return your call when she's able. She is not able to take the call right now. I just need to transfer you to her voicemail.

98. Plaintiff then left a voicemail with Ms. McClung, in which she stated,

> I just wanted to check in to see what the status [] was [] with my appeal for accommodations. We are getting extremely close to the exam day and, you know as you could expect, I'm a little *anxious* that I won't get a response in *due course* so if you could please call me back at . . . . I'd appreciate it. Thank you.

2. *The August 29 Phone Call*

99. Having not received any response, Plaintiff called BOLE again on August 29, 2025.

100. Plaintiff informed the representative,

> I'm still waiting for a response to my appeal for non-standard test accommodations. I left a message for Jessica yesterday and still no one has gotten back to me, but the exam is like 20 days away and I still don't know if I'm gonna get accommodations or not.

101. The representative replied,

You know if you left a voicemail you just need to give her time to respond.

102.    Plaintiff replied,

I understand, but I know, you know, it's a long weekend coming up, and I believe the Board has to give me a decision 20 days before the test, which is today.[2]

103.    BOLE's representative rudely stated,

Again, you just need to give her a chance to give you a call back. I do see the note that I spoke with you yesterday that I did put you through to her voicemail. You left a message and you just need to give her a chance to call you back.

104.    Plaintiff then asked, "will that be today?" BOLE's representative replied, "I can't make any promises."

105.    Plaintiff replied,

Okay, so I'm just a little concerned, because, it's, you know, it's within the Board's own rules rules that determinations must be 20 days before the exam, and if I don't get a response today, I won't get a response until it's like two weeks before the exam.

106.    BOLE's representatively incorrectly asserted,

You've done what you can do you just need to give us time to respond.

107.    Plaintiff corrected BOLE's representative and clarified,

---

[2] 22 NYCRR 6000.7(d) states that the Board "shall notify the applicant of its determination no later than twenty (20) days prior to the date of the examination for which such accommodations are requested." This applies to appeal determinations, as indicated by Deputy Executive Director Jessica McClung's statements via a phone call to another applicant. *See* Affidavit of T.J.B.

I mean, . . . there is more that I can do, and I'm just trying to get an answer whether or not I should do more and seek judicial intervention because this is getting [] ridiculous.

108.    BOLE's representative replied,

If you have other options that you choose to pursue then that's what you choose to pursue. But for right now, you know, you've left the phone message for her, and you just need to give her a chance to respond.

109.    Plaintiff responded by asking, "is she not in today?" BOLE's representative did not answer the question, but instead stated after a brief hesitation, "you just need to give her a chance to respond."

110.    Plaintiff replied by asking, "is there anyone else I can speak to, higher up?" BOLE's representative stated, "there is not."

111.    Plaintiff then asked, "John [McAlary] is not in?" to which BOLE's representative replied, "no."

112.    Plaintiff then asked, "and Jessica is in but just unable to speak to me right now?"

113.    BOLE's representative again dodged the question, and replied, "again you just need to give her a chance to respond."

114.    Plaintiff then stated, "okay, well if you could pass the message that I need to hear back something today, otherwise [] I don't know what else to do."

115.    BOLE's representative replied, "okay, I will convey a message to her."

116.    Plaintiff thanked the representative, and the call then concluded.

117.    As previously stated, it wasn't until September 2, 2025, fifteen (15) days prior to NYLE that Plaintiff finally received a denial determination on her appeal. *See* Affidavit of A.V., Exhibit O.

118.    Evidently, it is quite unclear what "course" is "due" according to BOLE.

F. The Futility of BOLE's Appeal Process

119.    The appeal denial letter from Jessica A. McClung contained no findings of fact, conclusions of law, or reasoning for the decision – just the conclusory statement that my appeal had been denied. *See* Affidavit of A.V., Exhibit O.

G. Imminent Irreparable Harm

120.    Plaintiff is at risk of imminent, irreparable harm as the result of BOLE's denial of her accommodations and subsequent appeal.

121.    Plaintiff is at risk of being required to take the bar exam in a different testing cycle, seven (7) months after the July 2026 Bar Exam in February of 2026, and eight (8) months after her anticipated graduation from law school, solely on the basis of her disability; or in the alternative, to take the exam under discriminatory circumstances without her necessary disability accommodations.

122.    Plaintiff is at risk of being required to take the NYLE in a different testing cycle, solely on the basis of her disability; or in the alternative, to take the exam under discriminatory circumstances without her necessary disability accommodations.

123.    Plaintiff would suffer substantial harm if required to take the NYLE in a different testing cycle.

124.    Plaintiff would suffer substantial harm if required to take the Bar Exam in a different testing cycle.

125.    After the December NYLE, the exam is administered in April – immediately before her Spring 2026 final exams, which are April 27 to May 11. *See* Affidavit of A.V., Exhibit M.

126.    Accordingly, Plaintiff's ability to prepare for the December 2025 or April 2026 NYLEs would be substantially impaired by her final exam periods.

127.    Additionally, in the event that Plaintiff fails the exam, each subsequent administration of the exam is an additional opportunity to take the exam prior to her graduation that she would be deprived of.

128. Plaintiff is now at certain risk of being unable to take the December 2025 NYLE with her necessary accommodations, solely on the basis of her disability.

129. Plaintiff is also at certain risk of being unable to take the July 2026 bar exam with her necessary accommodations, solely on the basis of her disability.

130. If Plaintiff is denied the ability to take the December 2025 NYLE, and July 2026 bar exam, with her necessary accommodations, Plaintiff risks having her entry into the legal profession unduly delayed, solely on the basis of her disability.

131. Plaintiff has experienced, and continues to experience severe emotional distress as the result of the actions of Defendants.


**First Cause of Action - Violations of the ADA**

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. The ADA prohibits discrimination by public entities, as well as entities that offer professional licensing exams, such as BOLE.

3. The ADA mandates that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. It further mandates that

> Any person that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes shall offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.

42 U.S.C. § 12189

4.  The regulations implementing the examinations section of the ADA mandate, *inter alia,* that entities

> offering an examination covered by this section must assure that— . . .

>> (iv) Any request for documentation, if such documentation is required, is reasonable and limited to the need for the modification, accommodation, or auxiliary aid or service requested.

>> (v) When considering requests for modifications, accommodations, or auxiliary aids or services, the entity gives considerable weight to documentation of past modifications, accommodations, or auxiliary aids or services received in similar testing situations, as well as such modifications, accommodations, or related aids and services provided in response to an Individualized Education Program (IEP) provided under the Individuals with Disabilities Education Act or a plan describing services provided pursuant to section 504 of the Rehabilitation Act of 1973, as amended (often referred to as a Section 504 Plan).

>> (vi) The entity responds in a timely manner to requests for modifications, accommodations, or aids to ensure equal opportunity for individuals with disabilities.

> 28 CFR § 36.309(b)(1)(iv);(v);(vi).

5.  DOJ guidance pertaining to these regulations further provide that

> Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test. In addition, the process should provide applicants with a reasonable

opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle. **Failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities.**

*See* DOJ ADA Guidance for Testing Entities (https://www.ada.gov/resources/testing-accommodations/).

6. Defendants requested excessive documentation; failed to give due weight to the documentation provided as required by the regulations; failed to request further documentation in a timely manner so as to ensure an equal opportunity for Plaintiff; and failed to maintain an adequate and timely appeal process to address these issues; all in violation of the ADA.

7. Defendants evidently unduly delayed rendering a determination on Plaintiff's request for accommodations and subsequent appeal so as to deliberately impair her right to seek judicial review.

8. Defendants illegally denied Plaintiff's request for accommodations, relying on an outdated definition of "disability" under the ADA, in violation of the ADA Amendments Act of 2008, and her lack of accommodations prior to her diagnosis, in violation of the rule set out in *Bartlett v. New York State Board of Law Examiners,* 156 F.3d 321, 326 (2nd Cir. 1998)).

9. Further, BOLE illegally rejected the sound judgment of Plaintiff's qualified treating medical professionals, in violation of the rule set forth in *D'Amico v. New York State Bd. of Law Examiners*, 813 F. Supp. 217, 223 (W.D.N.Y. 1993).

10. Defendants continue to deprive Plaintiff of the opportunity to take the NYLE and the Bar Exam with her necessary accommodations, and it is reasonably certain that they will continue to do so.

11. Defendants continue to maintain a deadline to apply for accommodations on the NYLE ninety (90) days prior to the exam – as opposed to the thirty (30) day deadline to register

for the exam for candidates not applying for accommodations, which is discriminatory in violation of the ADA.

12. It is reasonably certain that Defendants will continue to maintain and uphold such discriminatory policies and practices, threatening Plaintiff with the future injury of being denied the opportunity to take the NYLE and Bar Exam with her necessary accommodations.

### Second Cause of Action - Violations of the New York State Human Rights Law

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. BOLE's continuing actions, and certainly threatened future action, as set forth above are in violation of the prohibitions of discrimination on the basis of disability as set forth in N.Y. Exec. L. § 296(1)(a) and § 296(3)(a).

### Third Cause of Action – Declaratory Relief

1. There exists an actual and justiciable controversy among the parties as to which a declaratory judgment setting forth respective rights and obligations is necessary and appropriate pursuant to 28 U.S.C. § 2201.

2. Plaintiff is at risk of certainly impending injury of being deprived the opportunity to take the NYLE and bar exam without her necessary accommodations, due to the actions of Defendants.

### Fourth Cause of Action – Injunctive Relief

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. Defendants are erroneously, illegally, and baselessly preventing Plaintiff from receiving her reasonable accommodations on the NYLE and Bar Exam; failing to give due weight

to the documentation from her qualified treating professionals; failing to maintain a process under which they will render a final determination in a timely manner so as to ensure an equal opportunity for Plaintiff to take such exams; and failing to maintain an adequate and timely appeal process to address these issues; all in violation of the ADA. Such conduct by Defendants is reasonably certain to continue to occur, resulting in future injury on the dates of such exams.

3. The ADA authorizes injunctive relief as appropriate to remedy acts of discrimination against persons with disabilities. 42 U.S.C. § 12188(a)(1).

4. Unless the requested relief is granted, it is reasonably certain that Plaintiff will suffer irreparable harm in that she will be discriminated against and denied equal access to the New York Law Exam and Bar Exam by being denied her necessary accommodations, and accordingly, be unlawfully burdened in seeking and potentially denied admission to the legal profession in New York, solely on the basis of her disability.


### Fifth Cause of Action – Violation of Due Process under the Fourteenth Amendment of the United States Constitution

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. Defendants are continuously depriving Plaintiff of statutory rights that she is entitled to under the ADA, without due process of law, as required by the Fourteenth Amendment of the U.S. Constitution.

3. Defendants failed to maintain, continue to fail to maintain, and are reasonably certain to continue to fail to maintain an adequate appeal process. Additional procedural safeguards such as a legitimate appeal process that contained findings of fact, conclusions of law, and an actual indication of review of the Board's Consultant's decision to deny accommodations, should have been and should be in place, and would substantially reduce the risk of erroneous deprivation of Plaintiff's requested accommodations.

## Sixth Cause of Action – Violation of Equal Protection under the
## Fourteenth Amendment of the United States Constitution

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. Defendants treated Plaintiff differently on the basis of her sex, and currently continue to deprive her the opportunity to take the Bar Exam and NYLE with her necessary accommodations on the basis of her sex, in violation of the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution.

3. Defendants are currently denying and reasonably certain to deny Plaintiff equal protection of the law on the basis of her disability by denying her reasonable accommodations on the NYLE and on the bar exam, without rational basis.

## Seventh Cause of Action – Violation of the Civil Rights Act of 1964

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. Upon information and belief, BOLE receives federal funds in the form of grants and funding.

3. Title VII of the Civil Rights Act forbids any employers or employment agencies to discriminate on the basis of sex

4. Defendants act in a capacity that exercises substantial control over the employment opportunities of individuals in the legal profession, rendering them an "employer" within the meaning of the Civil Rights Act.

5. Defendants deprived, and are continuously depriving Plaintiff of the opportunity to take the NYLE and Bar Exam with her necessary accommodations, on the basis of her sex, and thus denying Plaintiff equal employment opportunity in the legal profession on the basis of her sex, in violation of the Civil Rights Act.

## Eighth Cause of Action – Damages Under 42 U.S.C. § 1983

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. 42 U.S.C. § 1983 provides that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

3. Defendants, under color of state law, deprived, and are continuously depriving, and are reasonably certain to engage in future deprivations of Plaintiff's constitutional and statutory rights.

## Ninth Cause of Action - Violation of Equal Protection under
## Article I, Section 11 of the New York State Constitution

1. Plaintiff realleges and incorporates herein all previously alleged paragraphs of the complaint.

2. Article 1, § 11(a) of the New York State Constitution provides that

> No person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of … disability . . . or sex . . . be subjected to any discrimination in their civil rights by any other person or by any

firm, corporation, or institution, or by the state or any agency or subdivision of the state, pursuant to law.

3. Defendants deprived, and are continuously depriving, and are reasonably certain to engage in future deprivation of equal protection of the laws of New York State to Plaintiff on the basis of her disability and of her sex.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

a. grant Plaintiff's request for declaratory relief, finding that Defendants' overly restrictive accommodations policies, including the 90 day deadline for the NYLE, and overly restrictive standards for grants of accommodations, violate Title II and Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102 *et seq.;* the Civil Rights Act of 1964; the United States Constitution; and the New York State Constitution;

b. enter a judgment for compensatory damages in favor of Plaintiff in an amount to be proven at trial before a jury that would fully compensate Plaintiff for the injuries alleged herein resulting from Defendants' conduct;

c. enjoin Defendants from:

 i. enforcing their test accommodation guidelines or relying on them as the basis for determinations; or in the alternative, enjoining Defendants from requesting excessive documentation, relying on the "one year" recency rule for psychiatric disabilities as as prescribed in the guidelines

 ii. relying on a lack of prior accommodations as the basis for denying accommodation requests

 iii. relying on sex based classifications in determining whether to grant requests for disability accommodations

 iv. unduly delaying accommodation request and appeal determinations

 v. upholding their denial of Plaintiff's request for accommodations, and mandating Defendants to administer the September 2025 NYLE and July 2026 bar exam to Plaintiff with her requested accommodations

     vi.    continuing their refusal to grant Plaintiff her requested accommodations upon her submitted documentation

d.  award Plaintiff her reasonable attorneys' fees and costs;

e.  grant such other relief as it deems just and equitable.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

**Dated: Bohemia, New York**
      **October 31, 2025**

Respectfully submitted,

_A. V._

**A.V.,** *Pro Se*

## VERIFICATION

**STATE OF NEW YORK** )

                    ) ss.:

**COUNTY OF NASSAU** )

      **A.V.,** being duly sworn, deposes and says:

      I am the named Plaintiff in this matter. I have read the annexed Verified Complaint, know the contents thereof, and the same are true to my knowledge, except as to matters alleged upon information and belief and, as to those matters, I believe them to be true.

                                           _____

                                           A.V.

**Sworn to and subscribed before**
**me this _31st_ day of October, 2025.**

_Carol R. Spinner_

**NOTARY PUBLIC**

Carol R. Spinner
Notary Public, State of New York
Reg. No. 01SP6014064
Qualified in Suffolk County
Commission Expires October 5, 2024