UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____X

**A.V.**

against

**THE NEW YORK STATE BOARD OF LAW EXAMINERS**;
**CARMEN BEAUCHAMP CIPARICK**, in her official capacity
as Chair, New York State Board of Law Examiners; **JOHN J.
MCALARY**, in his official capacity as Executive Director, New
York State Board of Law Examiners; **JESSICA A. MCCLUNG**,
in her official capacity as Deputy Executive Director, New York
State Board of Law Examiners; **BRYAN R. WILLIAMS**, in
his official capacity as a Member, New York State Board of Law
Examiners; **MICHAEL COLODNER**, in his official capacity
as a Member, New York State Board of Law Examiners;
**VICTORIA A. GRAFFEO**, in her official capacity as a Member,
New York State Board of Law Examiners; **CAROL C. VILLEGAS**,
in her official capacity as a Member, New York State Board of Law
Examiners; **LAWRENCE LEWANDOWSKI**, in his official
capacity as a Consultant, New York State Board of Law Examiners,
and as an individual
_____X

STATE OF NEW YORK
COUNTY OF NASSAU SS.:

**MEMORANDUM IN
OPPOSITION TO
DEFENDANT'S MOTION
TO DISMISS, AND IN
FURTHER SUPPORT OF
PLAINTIFF'S MOTION
FOR PRELIMINARY
INJUNCTION**
Civil Action No:
25-CV-4128(NJC)(LGD)

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# Table of Contents

Table of Contents..........................................................................................................2

Preliminary Statement...................................................................................................3

Background...................................................................................................................4

    A. NYS BOLE..........................................................................................................4

    B. Factual Background.............................................................................................4

    C. Procedural Background........................................................................................6

Argument.....................................................................................................................7

    I. I Do Not Lack Standing to Seek Prospective Equitable Relief.................................7

    II. Eleventh Amendment Immunity Does Not Bar My Claims..................................10

        A. ADA Title II Claims Are Not Bared.................................................................10

        B. I Can Seek Relief Under Ex parte Young..........................................................11

    III. The Amended Complaint Does Not Fail to State Plausible Claims.......................12

        A. My Constitutional Claims Do Not Fail............................................................12

            1. Procedural Due Process.............................................................................12

            2. Equal Protection.......................................................................................14

        B. My ADA Title II Claim Does Not Fail.............................................................15

    IV.  Preliminary Injunction Must be Granted..........................................................20

        A. There Is Irreparable Harm..............................................................................20

        B. There is A Clear and Substantial Likelihood of Success on the Merits...............24

        C. An Injunction Would be in the Public Interest...................................................24

Conclusion..................................................................................................................25

<u>**PRELIMINARY STATEMENT**</u>

Defendants assert that, during the temporary restraining order ("TRO") hearing on September 8, 2025, this Court held that I "failed to make any strong showing of harm required for the desired mandatory injunction," and that I had "no likelihood of success on the merits of [my] claims and lacked standing to obtain equitable relief because [I] was merely complaining of past injuries." However, as Defendants noted, I have amended my complaint. My Amended Complaint references additional harms that my initial complaint did not include. Defendants assert that I "ha[ve] not cured the fatal jurisdictional and substantive deficiencies" – however, the relief sought in my Amended Complaint places my request for declaratory and injunctive relief pursuant to Title II of the Americans with Disabilities Act ("ADA") and the Fourteenth Amendment of the United States Constitution squarely within the *Ex parte Young* exception to the Eleventh Amendment. Defendants' assertion that I "ha[ve] not stated plausible causes of action" is baseless.

Defendants assert that my "alleged harms remain *essentially unchanged* from those that this Court has already ruled were neither imminent nor irreparable" at the TRO hearing. Notably, the relief that I sought at that TRO hearing pertained only to the September 2025 New York Law Exam ("NYLE") – not the July 2026 Bar Exam. In my Amended Complaint, I seek relief pertaining to the Bar Exam, as well as a future administration of the NYLE. Defendants assert that I "have not even applied for accommodations" for the December 2025 NYLE – however, the facts pertaining to Defendants' past denial of my request for accommodations, which included all documentation I could possibly obtain and supply them with, demonstrates that a new request for such accommodations would have been futile.

Defendants assert that "the equities also weigh against granting injunctive relief, as it could have the effect of treating [me] more advantageously than other bar exam applicants when [I] ha[ve] not adequately substantiated [my] need for the requested accommodations, thereby *potentially* undermining public confidence in the fair administration of these critically important examinations." (*emphasis added*). These alleged harms asserted by Defendants are conjectural and hypothetical, and are entirely contingent on a myriad number of future events. Further, these concerns are easily addressed by the reality that my exam score would simply be nullified if I were to be granted preliminary injunctive relief but ultimately lose on the merits. Furthermore, to consider the granting of disability accommodations to be "advantageous[,]" rather than a means

3

of leveling the playing field and providing me with an equal opportunity, especially in light of my long-standing history of disability accommodations, is the same ableist and insulting rhetoric that likely motivated Defendants' denial of my request in the first place.

# BACKGROUND

### A. NYS BOLE

Defendants assert that since 1777, New York State courts have had the authority to regulate admission to the practice of law. However, there was no bar exam requirement until 1837 and The New York State Board of Law Examiners ("BOLE") wasn't established until 1894.[1] Further, the ADA was not enacted until 1990. For nearly the entirety of its existence, BOLE was not mandated to provide equal access to individuals with disabilities. For the past thirty-five (35) years, however, BOLE has been consistently failing to fulfill its obligations under the ADA – and to an even greater extent since it was amended, broadly expanding its coverage, in 2008.

Defendants have asserted that the only avenue for relief available to me, to seek reversal of the illegal and discriminatory denial of my accommodations, is an Article 78 proceeding in New York State Supreme Court. Defendants assert this despite the fact that my claims arise out of their violations of the U.S. Constitution and the ADA, a federal statute.

It is important to note that an Article 78 proceeding is not the only relief available, and further, not an adequate remedy on this matter, as set forth below.

### B. Factual Background

Defendants have described me as an individual who "allegedly suffers from a disability." While it is true that I suffer from my disability on a daily basis, this suffering is exacerbated by societal institutions, such as BOLE, that refuse to acknowledge and accommodate my disability *as required by law*.

---

[1] *See* https://nysba.org/new-york-needs-a-new-bar-exam/?srsltid=AfmBOopbGtfoLbMJNOVSxRIXUVFB6k5eXDCZH2Fm-Dkrta7mTW9pLWr8; https://www.nybarexam.org/

Defendants assert that my application "had been evaluated by an expert consultant." My denial letter asserted that this alleged "expert" consultant was an expert in a "field related to [my] condition[.]" *See* Affidavit of A.V, Exhibit K. However, the consultant, Lawrence "Larry" Lewandowski ("Lewandowski"), – is in fact **not** an expert in generalized anxiety disorder, or even anxiety disorders at all – but rather, is a purported expert in Attention Deficit Hyperactivity Disorder ("ADHD") and Learning Disability ("LD"), specifically, *in children*. Lewandowski has a page on Syracuse University's website, where he is a professor of psychology, which states,

> I am interested in the neuropsychological functioning of **children** with known or suspected neurological conditions, especially **LD and ADHD**. I also study cognitive, behavioral, and emotional aspects of these various disorders. I focus on treatment interventions for these **youngsters** that involve computer technology.

*See* https://artsandsciences.syracuse.edu/people/faculty/lewandowski-phd-larry/ (***emphasis added***).

None of Lewandowski's publications listed on this page pertain to generalized anxiety disorder, or even anxiety disorders at all. Even accepting the contention that Lewandowski is an expert in psychology generally, he possesses no legal qualifications, and is by no means qualified to make determinations that hinge on the interpretation of legal terms such as "substantially limits one or more major life activities" – which require complex knowledge and understanding of the ADA, its amendments, and case law. Further, Lewandowski did not actually conduct a face-to-face evaluation of me personally, and had no basis to discredit the sound judgment of my qualified treating professionals, without actually having evaluated me beyond mere documents.

Lewandowski and BOLE not only ignored the plethora of supporting information in my application, but also applied an improper standard of "substantially limits a major life activity as compared to most people" in violation of the ADA Amendments Act of 2008.

Defendants assert that I "unilaterally decided not to" take the NYLE – which is a gross mischaracterization and misstatement of reality. My decision was by no means unilateral – but solely and directly by reason of the fact that taking the exam without my necessary accommodations would inherently be subjecting myself to discriminatory circumstances that

would not accurately reflect my capabilities – but rather, my ability to work through my disability.

### C. Procedural Background

Defendants rely heavily on this Court's findings at the TRO hearing – which involved *only the September 2025 NYLE*; whereas here, not only is a future administration of the NYLE at issue – but also the Bar Exam. Further, additional harms that I did not mention in my initial complaint have been asserted in my Amended Complaint. Additionally, the Court's finding was also in part due to Defendants' arguments that my claims were barred by sovereign immunity, and that further briefing was needed on this issue. (Transcript of Civil Cause for Telephone Conference, 53:11-13, September 8, 2025). As demonstrated upon my Amended Complaint, amended Memorandum of Law in Support of my Amended Order to Show Cause, and this Opposition, the relief I seek is solely prospective, and I have now shown a substantial likelihood of success on the merits. Further, my Amended Complaint shows that the accommodation I requested was reasonable.

> "[T]he determination of whether a particular [accommodation] is 'reasonable' involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the [accommodation] in light of the nature of the disability in question and the cost to the organization that would implement it." Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995). Accordingly, "[a]ll that plaintiffs must do at the motion to dismiss stage is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." Shaywitz v. Am. Bd. of Psychiatry & Neurology, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009) (quotation marks and citations omitted).

Doe v. Skidmore Coll., No. 117CV1269LEKCFH, 2018 WL 3979588, at *4 (N.D.N.Y. Aug. 20, 2018), vacated, No. 117CV1269LEKCFH, 2020 WL 529687 (N.D.N.Y. Feb. 3, 2020) (vacated due to settlement).

With respect to my due process claims, I have asserted in my Amended Complaint that additional procedures warranted – at the very least, a process that shows that the Board *actually reviewed* Lewandowski's determination and all of my supporting documentation, rather than

rubber-stamping Lewandowski's determination. It is not unclear – it is very clear that Lewandowski and the board members were motivated by animus and ill will.

With respect to my equal protection claims, I have demonstrated that Lewandowski was motivated by animus or ill will – though, at the TRO stage of this proceeding, I had referred to him as "Unknown Consultant" due to the Board Defendants' substantial, extensive efforts to conceal Lewandowski's identity. Further, I have demonstrated that each of the Board members, who collectively decided to deny my appeal, were motivated by animus or ill will by upholding Lewandowski's evidently discriminatory action without any further inquiry.

Though Defendants characterize my request for a declaration as to the illegality of Defendants' "accommodations policies" as "largely unspecified[,]" I explicitly identified such policies, including those in my request for injunctive relief that Defendants specifically listed. Additionally, I made it clear that I also challenge Defendants' overly stringent standards for meeting the definitions of "disability" and "substantially limits one or more major life activities" that are contrary to the ADA.

## ARGUMENT

### I.   I Do Not Lack Standing to Seek Prospective Equitable Relief

Contrary to Defendants' assertion, I do not lack the requisite injury-in-fact to confer Article III standing. As an initial matter, Defendants do not dispute that I have demonstrated that I face certainly impending injury with respect to the July 2026 Bar Exam. Furthermore, despite Defendants' contentions, I have also demonstrated that I face a credible threat of certainly impending injury with respect to *all* testing cycles for both the NYLE and Bar Exam – including the December 2025 NYLE and post-July 2026 Bar Exam testing cycles.

Defendants assert that I "chose not to" submit an additional application for accommodations by the September 19 deadline for the December 2025 NYLE. Notably, the fact that the deadline to request accommodations is sixty days prior to the deadline to register for the exam for applicants who are not taking the exam with accommodations, in and of itself, is discriminatory. In previous matters, the Department of Justice ("DOJ") has found that the New York State Board of Law Examiners'

policy, prior to November 1992, of requiring applicants to submit requests for accommodations 90 days before the date of the examinations, while permitting applicants who did not request accommodations to file up to 30 days before the examination, was a violation of 28 C.F.R. 35.130(a); (b)(1)(ii) ; (iii) ; and (vii) ; and (b) (6) and (7).

The requirement that applicants with disabilities who requested accommodations for the February 1992 examination file their requests earlier than the filing deadline for other applicants, January 27, 1992, was a violation of 28 C.F.R. 35.130 (a); (b) (1) (ii); (iii); and (vii); and (b) (6) and (7).

*See* 1994 DOJ Findings Letter to BOLE, https://www.justice.gov/crt/foia/file/669816/dl.

While BOLE may have remedied this violation of the ADA and its regulations with respect to the Bar Exam registration deadline, it failed to also do so with respect to the NYLE.

Furthermore, if I were to have submitted an additional request for accommodations for the December 2025 NYLE, or any future administration of the NYLE or Bar Exam, it is reasonably certain that such an application would have been denied, as my initial one contained every possible document BOLE required. It would have been futile to re-submit an identical application that the board has clearly already made up its mind on.

Even further, the DOJ's ADA guidance for testing entities requires that testing entities "must respond in a timely manner to requests for testing accommodations so as to ensure equal opportunity for individuals with disabilities" and accordingly requires that

Testing entities should ensure that their process for reviewing and approving testing accommodations responds in time for applicants to register and prepare for the test. In addition, the process should provide applicants with a reasonable opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle. Failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities.

*See* https://www.ada.gov/resources/testing-accommodations/ ("DOJ Guidance").

Unlike the plaintiffs in <u>Do No Harm v. Pfizer Inc</u>., 126 F.4th 109 (2025), which Defendants rely upon, I actually applied for accommodations on the Bar Exam and for the NYLE.

As Defendants set forth, "Ordinarily, to establish standing to challenge an allegedly discriminatory program, a plaintiff must apply to that program." <u>Id.</u> at 118 (citing <u>Jackson-Bey v. Hanslmaier</u>, 115 F.3d 1091, 1096 (2d Cir. 1997)).

However, Defendants conveniently omit the language that immediately follows:

> But a plaintiff need not go through the motions of formally applying when that would be a "futile gesture." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 365–66, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) ("If an employer should announce [its] policy of discrimination by a sign reading 'Whites Only' on the hiring-office door, [its] victims would not be limited to the few who ignored the sign and subjected themselves to personal rebuffs."). In such circumstances, a plaintiff need only demonstrate that they are able and ready to apply, but a discriminatory policy prevents them from doing so on equal footing. *Gratz v. Bollinger*, 539 U.S. 244, 262, 123 S.Ct. 2411, 156 L.Ed.2d 257 (2003).

<u>Do No Harm v. Pfizer Inc</u>. 126 F.4th 109, 118 (2d Cir. 2025)

Here, unlike the Plaintiffs in <u>Libertarian Party of Erie Cnty. v. Cuomo</u>, 970 F.3d 106 (2d Cir. 2020), I *actually* applied for accommodations, and was denied, for the July 2026 Bar Exam, and September 2025 NYLE. Defendants' accommodations process and policies, as shown through my previous denials, have demonstrated that an additional attempt, with the same documentation, would have been a "futile gesture" – and BOLE's overly stringent definition of disability, in violation of the ADA Amendments Act of 2008, therefore prevent me from re-applying for accommodations "on equal footing" as required by law.

Defendants assert that as I do not "have any other applications pending, [I] am no longer subject to any purportedly illegal Board policies, nor can [I] be harmed by what the Board may rely upon, or how long it may take, in making accommodation determinations." If I still had an application pending, BOLE would have asserted that I failed to exhaust my administrative

remedies based on the pendency of a determination on such an application. Further, I am still very much subject to the determination that BOLE made with respect to the July 2026 Bar Exam. Additionally, as previously stated, it is reasonably certain that any subsequent applications would likewise be denied for the same reasons.

Defendants assert that my injuries are "conjectural and hypothetical" as they "are entirely contingent on a *myriad* of future events" (*emphasis added*), relying on <u>Davis v. New York State Board of Elections</u>, 689 Fed.Appx 665 (2d Cir. 2017). However, in that case, the plaintiff's injury was entirely hypothetical and turned on contingent future events because in order for the injury to exist, a majority of the voters in New York State would have had to vote in favor of calling a Constitutional Convention, in addition to 3,000 voters signing a petition nominating him. My case, however, involves an application for disability accommodations that was ultimately denied by five individuals – and circumstances under which a substantively identical application to the same five individuals is reasonably certain to lead to the same outcome. As the common phrase states, "insanity is doing the same thing over and over again and expecting different results," and repeating the application process with an identical submission would be both futile and *insane*.

Even if I were to submit additional applications, I would still be subject to the discriminatory, extensive undue delays that BOLE's accommodations process is riddled with, which amounts to a denial of equal opportunity, as per the DOJ Guidance.

## II. Eleventh Amendment Immunity Does Not Bar My Claims

### A. ADA Title II Claims Are Not Bared

Defendants rely on <u>T.W.</u> for the contention that BOLE is "entitled to Eleventh Amendment immunity for suits brought under Title II of the ADA." However, that case also sets forth that

> "[t]here is a well-known exception to this rule—established by the Supreme Court in *Ex parte Young* and its progeny—by which suits for prospective relief against an individual acting in his official capacity may be brought to end an ongoing violation of a federal law. In determining whether a litigant's claim falls under the *Ex*

*parte Young* exception, we ask two questions: whether the complaint (1) alleges an ongoing violation of federal law; and (2) seeks relief properly characterized as prospective." *Id.* (footnotes omitted).

T.W. v. New York State Bd. of L. Examiners, 110 F.4th 71, 91 (2d Cir. 2024), cert. denied, 145 S. Ct. 2700, 221 L. Ed. 2d 966 (2025)

In my Amended Complaint, I have alleged ongoing violations of Title II of the ADA (as the July 2026 Bar Exam has not yet occurred, and I am reasonably certain to face the same outcome with respect to any other potential application). *See* Amended Complaint, P. 4, 11, 27, 120, 121, 131; First Cause of Action, P. 10, 12; Second Cause of Action, P. 2; Fifth Cause of Action, P. 2, 3; Sixth Cause of Action: P. 2, 3; Seventh Cause of Action: P. 5; Eighth Cause of Action: P. 3; Ninth Cause of Action: P. 3; Prayer for Relief, P. (c)(vi)).

My Fourteenth Amendment due process and equal protection clause claims are not barred by Eleventh Amendment immunity, as the *Ex parte Young* exception applies.

## B. I Can Seek Relief Under *Ex parte Young*

The *Ex parte Young* exception to the Eleventh Amendment applies as this case involves an "ongoing violation of federal law" and I "seek[] relief properly characterized as prospective" against the Board members, who are state officials. Contrary to Defendants' assertion, the relief sought is prospective, not retrospective – and I do not lack standing.

Defendants assert that "despite this Court's ruling on the TRO," I continue to "impermissibly seek relief related to the Board's past denial of [my] accommodation request for the September 2025 NYLE and July 2026 [Bar Exam] in the [Amended Complaint]." This is a gross mischaracterization – as I have amended my complaint to ensure that all relief sought is prospective (*See* Second Amended Complaint, P. 4, 11, 27, 120, 121, 131; First Cause of Action, P. 10, 12; Second Cause of Action, P. 2; Fifth Cause of Action, P. 2, 3; Sixth Cause of Action: P. 2, 3; Seventh Cause of Action: P. 5; Eighth Cause of Action: P. 3; Ninth Cause of Action: P. 3; Prayer for Relief, P. (c)(vi))

Further, I do not solely challenge BOLE's denial of my application in the past – but rather, I also challenge BOLE's continuing refusal to administer the exams to me with my

necessary accommodations, in accordance with this past determination. Further, I challenge the Board's policies, practices, and procedures that render any potential future application for accommodations futile. I do not seek a remedy of past events – but rather, seek to use these past events (the denial and its reasoning) to demonstrate why the currently ongoing deprivation of and refusal to grant accommodations is *currently* illegal, and warrants a remedy. Further, contrary to Defendants' assertions by implication, *July of 2026 has not yet occurred*.

The case of <u>Dorce v. City of New York</u>, 2 F.4th 82 (2d Cir. 2021), cited by this Court at my TRO hearing and by the Defendants, is not relevant to this matter. That case held that a plaintiff cannot rely solely on past injuries. However, in citing that case, this Court did not have the benefit of my Amended Complaint which unequivocally seeks a remedy for the ongoing deprivation of accommodations. *See* Amended Complaint, First Cause Of Action, Paragraph 10 ("Defendants continue to deprive Plaintiff of the opportunity to take the NYLE and the Bar Exam with her necessary accommodations, and it is reasonably certain that they will continue to do so").

In <u>Caruso v. Zugibe</u>, 646 Fed.Appx. 101 (2d Cir. 2016), cited by Defendants, the plaintiff sought to reopen a closed criminal case to permit additional victim input at sentencing, which the Second Circuit found to be retrospective in nature. Here, in sharp contrast, I seek the relief of the granting of accommodations for an exam that has not yet happened.


## III.    The Amended Complaint Does Not Fail to State Plausible Claims

### A.  My Constitutional Claims Do Not Fail
#### *1.  Procedural Due Process*

Taking the Bar Exam and NYLE with my necessary accommodations is a statutory liberty and/or property interest that I am entitled to under the ADA. As an individual with a disability, I am statutorily entitled to necessary, reasonable accommodations on such exams. At the very least, I am entitled to an adequate process to determine my eligibility for such accommodations.

Contrary to the assertion of Defendants, I did not receive adequate process – and would not receive adequate process if I were to apply again. I initially applied for accommodations in April; did not receive a determination until four months later in August; and only received a final

determination on my appeal mere weeks prior to an exam at issue. While it is true that I had adequate notice of the process, I was not provided with an adequate opportunity to be heard. Regarding my claims pertaining to the lack of any reasoning in BOLE's determination on my appeal, which was a rubber-stamp for Lewandowski's blatantly erroneous and discriminatory determination, Defendants assert that there is no requirement that BOLE even actually state that it had reviewed Lewandowski's report, or read any of the substance of my appeal. Defendants assert that no authority supports my contention that such legitimate review was necessary – citing *their own rules* as authority.

Such an appeal determination, that made no reference to my appeal or the denial letter, and contained no reasoning, findings of fact, or conclusions of law is not constitutionally "adequate." Without such procedural safeguards, how are applicants to even know that their appeal was read?

Defendants assert that an Article 78 proceeding in New York State Supreme Court would have been an adequate post-deprivation remedy, barring my due process claims from federal court. As an initial matter BOLE is an arm of the New York State Courts, and its Board members are appointed by the Court of Appeals (*see* N.Y. Judiciary Law § 56). Any Article 78 proceeding would ultimately be subject to appellate review by the Court of Appeals. Accordingly, an Article 78 proceeding would essentially be asking the New York State Unified Court System to decide on a proceeding against itself.

Most importantly, courts overseeing Article 78 proceedings have failed to adequately provide relief in ADA cases against BOLE. In <u>J.A. v. New York State Board of Law Examiners</u>, Index No. 903151-25 (N.Y. Sup. Ct. Albany Co. 2025), cited by Defendants, the Petitioner-Plaintiff's request for a preliminary injunction was not even ruled upon until *after* the bar exam had already concluded, and the order dismissing the case did not substantively address the ADA or its interpreting regulations, case law, and guidance. In *J.A.*, The New York State Supreme Court of Albany County stated that the authority that it was "[g]uided by" was BOLE's own regulations that cite the ADA, rather than the ADA itself. *Id* at 10. Accordingly, an Article 78 proceeding would not have been, and still would not be, an adequate remedy.

## 2. Equal Protection

Defendants assert that sex discrimination claims under the Fourteenth Amendment only apply to adverse employment action, citing Fay v. Barbera, 2025 U.S. App. LEXIS 13340, at * 3 (2d Cir. June 2, 2025). However, *Fay* merely sets forth the standard for employment related claims, and does not support the proposition that the Fourteenth Amendment only confers liability in the employment context. On the contrary, the Fourteenth Amendment prohibits state governments from engaging in discrimination on the basis of sex without an "exceedingly persuasive justification" in all contexts – not merely employment. United States v. Virginia, 518 U.S. 515 (1996) (holding that the State of Virginia violated the Equal Protection Clause of the Fourteenth Amendment by imposing a sex-based restriction on admissions to a state university, relying on overbroad generalizations and sex stereotyping).

Defendants assert that I have "not alleged a plausible inference of sex-based animus" and assert that my Amended Complaint is "largely devoid of any facts regarding the involvement of any of the Individual Defendants." However, my Amended Complaint clearly sets forth that I received a final denial determination from BOLE, denying my accommodations (*see* Amended Complaint*,* Paragraphs 117, 119-120) and each of the Individual Defendants, (other than Lewandowski, who directly made the initial discriminatory sex-based determination) are members of BOLE. *See* Amended complaint, Paragraphs 4-11, 117, 119-120.

While the board's "empirical observation *alone* does not plausibly show purposeful or intentional discrimination," in conjunction with the other circumstances (such as undue delay in denying accommodations and unnecessary hurdles in obtaining a final disposition on my request for accommodations and the decision to ultimately deny my request for accommodations at least in part because of my sex) certainly does. It is worth noting that a source for this alleged "empirical observation" was not provided, and still has yet to be provided, by Defendants.

The United States Supreme Court has held that

> State actors controlling gates to opportunity … may not exclude qualified individuals based on "fixed notions concerning the roles and abilities of males and females." Mississippi Univ. for Women, 458 U.S. at 725; see J. E. B., 511 U.S. at 139, n. 11 (equal protection principles, as applied to gender classifications, mean state actors may not rely on "overbroad" generalizations to make

"judgments about people that are likely to . . . perpetuate historical patterns of discrimination").

United States v. Virginia, 518 U.S. 515, 541-42, 116 S. Ct. 2264, 2280 (1996)

Further, the Supreme Court has stated that "generalizations about 'the way women are,' estimates of what is appropriate for most women, no longer justify denying opportunity to women whose talent and capacity place them outside the average description." United States v. Virginia, 518 U.S. 515, 550, 116 S. Ct. 2264, 2284 (1996).

Defendants assert that I attempt to "bring a concurrent Section 1983 cause of action" based on a violation of the ADA. However, Defendants have incorrectly mischaracterized my claim of a violation of the Equal Protection Clause of the Fourteenth Amendment on the basis of my disability (separate and distinct from my ADA claims). Defendants assert that my claims "are identical to [my] ADA claims" and are therefore deficient – however, this assertion ignores the fact that different standards of review apply for claims arising out of the ADA, and claims arising out of the Equal Protection Clause. City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 105 S. Ct. 3249 (1985).

Defendants are treating me disparately and denying me an equal opportunity to access the bar exam on the basis of my disability, without rational basis, in violation of the Equal Protection Clause.

### B.  My ADA Title II Claim Does Not Fail

I have plausibly demonstrated and alleged that my requested reasonable accommodation was necessary to accommodate my disability and provide me with equal access to the bar exam. I have demonstrated this in my application for accommodations to Defendants, and also alleged this in my Amended Complaint. *See* Amended Complaint, p. 18-21). Such documentation demonstrated that I am substantially limited in numerous major life activities, including but not limited to test-taking. Defendants, who are subject to the ADA, are continuously failing to make reasonable accommodations.

Specifically, I stated that I "experience[] substantial limitations in processing and responding to sensory input and managing time, especially under time pressure, as compared with members of the general population" – which was supported by my medical documentation.

(*See* Amended Complaint, p. 20). All documentation that I submitted to BOLE, including my medical documentation, I also submitted to this Court along with my initial filings – despite Defendants' contention that they were "curiously omitted." *See* Affidavit of A.V, Exhibits B, C, D, E, F, G, H, I, J, K, L.[2] My documentation demonstrated substantial evidence of how my disability limits me in the area of test-taking.

The April 10, 2025 recommendation for accommodations from my qualified treating professional was not merely conclusory, but rather based on "a comprehensive clinical interview, review of relevant medical and academic history, and administration of psychological assessment tools." *See* Affidavit of A.V., Exhibit C; *see also* - Amended Complaint. Specifically, this letter documented that my condition "substantially limits [my] ability to concentrate, process information efficiently, and manage time under pressure. These limitations are consistent across multiple settings and had a long-standing impact on academic performance." The fact that the specific psychological assessment tools used were not described in this letter is immaterial – BOLE lacked sufficient evidence to discount this qualified professional's judgment, especially in conjunction with the 2020 psychological report (*see* Affidavit of A.V., Exhibit D) and evidence of long-standing history of accommodations provided. *See* Affidavit of A.V., Exhibits E, F, G, H; *see also* D'Amico v. New York State Bd. of Law Examiners, 813 F. Supp. 217.

Furthermore, DOJ Guidance states that

> Examples of types of documentation include:
> ● Recommendations of qualified professionals;
> ● Proof of past testing accommodations;
> ● Observations by educators;
> ● **Results** of psycho-educational or other professional evaluations;
> ● An applicant's history of diagnosis; and
> ● An applicant's statement of his or her history regarding testing accommodations.

It further provides that

> Depending on the particular testing accommodation request and the nature of the disability, however, a testing entity may only need one or two of the above documents to determine the nature of the candidate's disability and his or her need for the requested testing

---

[2] I submitted these documents to the pro se clerk along with all of my initial filings; and also provided Defendants with these submissions when I provided them with notice of my TRO request. PACER currently indicates that they are under seal.

accommodation. If so, a testing entity should generally limit its request for documentation to those one or two items and should generally evaluate the testing accommodation request based on those limited documents without requiring further documentation.

*See* DOJ Guidance (**emphasis added**).

The DOJ Guidance clearly states that the ***results*** of professional evaluations should be deemed sufficient. A demand from BOLE for every single intricate detail pertaining to the evaluation and all methods utilized and criteria satisfied is well beyond the scope of this, and is unduly invasive and burdensome for applicants.

Defendants' assertion that the 2020 psychological report indicated that I have "above average cognitive abilities--including in the areas of reading, writing, and speed of processing" is inaccurate and mischaracterizing, and wholly inappropriate and out of place to support their contention that I should not receive accommodations on the Bar Exam. Notably, this psychological evaluation was *not* taken under time pressured conditions, and in no way analogous to high-stakes standardized testing. My ability to read, write, and process sensory input in a private room in a medical professional's office – which is *already* a *reduced-distraction environment*, under which there are *no time restraints* – does not negate the existence of the need for accommodations, as demonstrated elsewhere in the report.

As set forth in my Memorandum of Law in Support of my Amended Order to Show Cause ("AOSC"), the 2020 evaluation stated that it

consisted of comprehensive assessment of developmental and educational history, clinical interviews, behavioral observations and standardized, norm-referenced measures including the Behavior Rating Inventory of Executive Function: Second Edition, Adult Version (BRIEF A), the Barkley Deficits in Executive Functioning Scales and the Beck Anxiety Inventory. Results of this evaluation indicate that [I] meet[] the DSM-5 criteria for Generalized Anxiety Disorder (DSM 5 300.02; ICD 10 F41.1)

The 2020 evaluation concludes with a recommendation for accommodations, which stated:

Based upon the results of this evaluation and the fact that [my] significant[] symptoms interfere with the educational process, [I] would benefit from university academic accommodations.

Notably, under <u>Bartlett</u>, Defendants may <u>*not*</u> cherry-pick particular evaluation scores while ignoring other relevant measures. As was the case in <u>Bartlett,</u> a psychiatric disability such as GAD is "not quantifiable merely in test scores. . . . [Rather] diagnosing a learning disability requires clinical judgment." <u>Bartlett v. New York State Bd. of Law Exam'rs</u>, 156 F.3d 321, 325-326 (2nd Cir. 1998); *See also* Memorandum of Law in Support of AOSC (p. 17-20).

Here, Defendants seek to do exactly what <u>Bartlett</u> prohibits – as they rely on a singular evaluation score, measured in an environment in which no accommodations were needed due to the mitigating circumstances of the environment, and blatantly disregard the report's statements regarding evaluation of my difficulties with executive function and time-management, especially as exacerbated under high-anxiety and time-pressured situations.

The ADA Amendments Act of 2008 clearly states that the "determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." 29 C.F.R. § 1630.2 (j)(1)(vi); *See also* <u>Bibber v. Nat'l Bd. of Osteopathic Med. Exam'r, Inc.</u>, No. CV 15-4987, 2016 WL 1404157, at *7 (E.D. Pa. Apr. 11, 2016). Further, in determining whether an impairment substantially limits major life activities, courts must consider evidence that reflects an individual's expected performance without mitigating measures. 29 C.F.R. part 1630, Appx. A; *see also* <u>Bibber</u>. Mitigating measures such as the lack of time-pressure and the inherent private nature of a medical testing environment were present during the 2020 evaluation.

In <u>Ramsay v. Nat'l Bd. of Med. Examiners</u>, No. 19-CV-2002, 2019 WL 7372508, at *13, 18 (E.D. Pa. Dec. 31, 2019), <u>aff'd,</u> 968 F.3d 251 (3d Cir. 2020), the Third Circuit affirmed a finding that a medical student with ADHD was disabled under the ADA, although "despite [her impairments], [plaintiff] has been able through her high intelligence and remarkably hard work habits to achieve great academic success" and "performed exceedingly well overall academically during this time with little help. Likewise, [she] scored quite well on several standardized tests without accommodations, including the ACT and the MCAT examinations. Certainly, in comparison to the average individual in the general population, [she] appears to have been and continues to be quite successful in her endeavors[.]" Likewise, I am disabled and need accommodations, despite my alleged "standardized test prowess" that Lewandowski and BOLE found to be dispositive based on my unaccommodated SAT scores from 2018 (prior to my

diagnosis) and alleged "above average cognitive abilities" that Defendants assert are demonstrated by the 2020 evaluation.

Furthermore, in <u>Bartlett</u>, on remand from the Second Circuit, then District Court Judge Sotomayor held that with respect to test results, defining whether an individual has a disability cannot be "based on outcomes alone, particularly in the context of learning disabilities," especially where a plaintiff is "extremely bright and hardworking, and…uses alternative routes to achieve academic success." <u>Bartlett v. New York State Bd. Of Law Examiners</u>, No. 93-4986, 2001 WL 930792, at *37 (S.D.N.Y. Aug. 15, 2001); <u>see also</u> 29 C.F.R. § 1630.2(j)(4)(iii) ("The focus is on how a major life activity is substantially limited, and not what outcomes an individual can achieve."). Much like the plaintiff in <u>Bartlett</u>, my "above-average" scores do not tell the story of how I had to work substantially harder than my non-disabled peers to compensate for my functional limitations in order to achieve such results.

The cases that Defendants cite in support of their contention that I am not disabled are not analogous, and do not actually support their position.

In <u>Wiltz v. NYU</u>, 2019 US Dist LEXIS 17711 (S.D.N.Y. 2019), the plaintiff's Title II claim was dismissed because the plaintiff failed to allege sufficient facts to show how his depression, anxiety or stress had limited his activities. In <u>Wiltz</u>, the only "major life activity" that the plaintiff identified was "participating in housing court litigation" while facing eviction for improperly occupying rent-stabilized housing – and the plaintiff failed to allege any facts that indicated that his alleged conditions limited his ability to participate in such litigation.

Here, I have asserted and demonstrated that I am substantially limited in the major life activities of eating, sleeping, caring for myself, learning, working, socializing, focusing, managing time, attending classes, completing coursework, functioning in high-stakes time-pressured settings, and test-taking. *See* Amended Complaint, Paragraphs 17-21; *see also* Affidavit of A.V., Exhibits B, C, D.

The case of <u>McNamara v. Kaye</u>, 2008 U.S. Dist. LEXIS 62568 (EDNY 2008), does not support the Defendants' argument. In <u>McNamara</u>, the plaintiff was an attorney facing disbarment, who made the conclusory allegation that she was denied "reasonable accommodation with regard to her professional license," but did not actually request a specific accommodation for a particular functional limitation. There, the plaintiff failed to provide the court with enough facts to raise a plausible claim that her multiple sclerosis placed her at a

disadvantage throughout the disciplinary proceedings. Here, to the contrary, I clearly and unequivocally established that I would be substantially disadvantaged without the requested accommodations.

In <u>Lynch v. Conn Judicial Branch</u>, 2020 US Dist LEXIS 183656 (D.Ct. Conn 2020), the plaintiff failed to sustain his claim pursuant to Title II of the ADA where he failed to produce any medical evidence, making the conclusory allegation that "[a]nxiety, depression, PTSD, and a heart condition fall within the impairment[s] that a lay jury could understand[.]" <u>Id</u> at 15. In <u>Lynch</u>, the plaintiff, who was a self-represented defendant in multiple foreclosure lawsuits, sought *fourty eight (48)* different accommodations under the ADA, by reason of multiple alleged disabilities, one of which included "legal abuse syndrome." <u>Id</u> at 3.The plaintiff asserted that he was diagnosed with legal abuse syndrome over the phone by his doctor who suddenly passed away during the course of the litigation, and could not testify. <u>Id</u> at fn 8. Here, I submitted medical evidence from multiple doctors that supports my diagnosis, in addition to a personal statement and a long history of accommodations.

Defendants, in their motion to dismiss, do not even dispute that my requested accommodation was reasonable. Their entire position rests solely on the argument that my requested accommodation is not "needed" because I have not demonstrated that I am "disabled" within the meaning of the ADA, despite the expansive 2008 Amendment to the definition of "disability."

## IV. Preliminary Injunction Must be Granted

### A. There Is Irreparable Harm

Defendants assert that my arguments regarding my impending harm are "the same as [I] previously raised in [my] TRO application" – however, this blatantly disregards the fact that the relief sought here involves the Bar Exam as well as the NYLE, as opposed to solely the NYLE.

Further, Defendants assert that as "this Court has already found [most of my alleged] harms were not imminent and irreparable . . . they cannot support a preliminary injunction award either." However, factual circumstances have changed since the TRO hearing, as there is now one fewer opportunity for me to take the NYLE exam prior to my law school graduation and the July 2026 Bar Exam.

Additionally, as noted by Defendants, I have asserted that I will face additional harm that I did not raise in my initial request for the TRO. Defendants assert that the harm of being unable to prepare for the exams along with my classmates and avail myself of my school's preparatory programs is not actual, imminent, or caused by the Defendants, as I can simply study for the exam or still participate in such programs. However, this inherently eliminates my ability to prepare for the exams *effectively*, since I would be unable to take the exams immediately following preparing for them (as is usually done) with my necessary accommodations. It is insulting that Defendants assert that it is a mere "preference" to prepare for such a hefty exam immediately prior to taking it – as opposed to a practical necessity. To prepare for a bar exam, only to be unable to take it under equal circumstances due to pending litigation regarding the denial of my accommodations, would effectively render such preparation efforts fruitless and wasted.

Further, with respect to the NYLE, Defendants assert that I "*did not apply for accommodations for that test*" (emphasis in original) – however, as previously stated, I submitted an application for the September NYLE, that was not decided upon until immediately before that exam, and was denied. Submitting a substantively identical application to be ultimately reviewed by the same individuals would have been futile, especially with litigation pending on the issue. It is insulting that Defendants attempt to characterize this as a "harm of [my] own making."

Defendants assert that I still have two other opportunities to take the NYLE, but disregard the DOJ Guidance, cited *supra*, that states that applicants should have a "reasonable opportunity to respond to any requests for additional information from the testing entity, and still be able to take the test in the same testing cycle." It further states that "failure by a testing entity to act in a timely manner, coupled with seeking unnecessary documentation, could result in such an extended delay that it constitutes a denial of equal opportunity or equal treatment in an examination setting for persons with disabilities." Such a denial of equal opportunity is and of itself irreparable harm.

Defendants assert that my claims of harm are "based on [my] entirely speculative assumption that [I] would not obtain a passing score on the December 2025 NYLE or the July 2026 NYBE if I] tested without accommodations." This is inherently untrue – taking the exams under discriminatory circumstances *at all* would amount to imminent irreparable harm, regardless of whether I ultimately receive a passing score or not. The purpose of the ADA was

not to merely ensure that I am able to "pass" – but to ensure that my capabilities are adequately demonstrated, rather than my ability to work through my disability.

Defendants assert that since I "allege[] that I ha[ve] expended substantial time and effort in preparing for the December 2025 NYLE," that I "certainly could pass without accommodations, particularly since it is an open book and exam, and [I] ha[ve] successfully completed the New York Law Course video lectures." This assertion is insulting, discriminatory, and baseless. It is absolutely illogical for Defendants to assert that I "certainly could pass without accommodations" because I devoted substantial effort towards preparing for the exam and because it is open book. Such an assertion completely disregards the reality that I am still at a disadvantage relative to an individual who is not disabled who expended the same amount of effort towards preparing for the same open book exam. Defendants are in no position, and have no qualifications, to assert that I "certainly could pass without accommodations" solely based on my allegation that I have prepared for the exam. Further, unlike most applicants, who do not have to endure discrimination in the process of taking these exams, I have already lost the benefit of having watched the New York Law Course videos. These videos were required in order to register for the September exam – which I was unable to take due to my denial of accommodations.

Defendants further assert that if I do not pass the NYLE, I "would simply have to test again, like other individuals who do not pass the test." The difference, in my case, is that if I were to fail, my failing score would almost certainly be the result of my denied accommodations – or at the very least, a substantial contributing factor.

Further, Unlike the circumstances in my initial TRO request, this preliminary injunction request involves not only the NYLE, but also the Bar Exam.

Defendants rely on a case from the District of Massachusetts, a different circuit, denying injunctive relief – Baer v. Nat'l Bd. of Med. Examiners, 392 F. Supp. 2d 42, 49. However, in that case, the District of Massachusetts found that the plaintiff was not disabled, as test-taking was not a major life activity. Id. at 47. Notably, that case was decided prior to the 2008 Amendments Act, which, as previously stated, greatly expanded the definition of disability, including the definition of major life activity.

Further, the exam at issue in <u>Baer</u> was part of a particular, specific, rigorous academic program, where the plaintiff could have pursued other medical schools that did not condition matriculation on the exam and avoided taking the exam. <u>Baer</u> at 49. Accordingly, the harm there was not irreparable to her medical career because she could have pursued other options. In stark contrast, in this case, I have no alternative options – sitting for the NYLE and Bar Exam administered by Defendants is the *only* way for me to seek admission to the practice of law in New York State. Accordingly, the denial of accommodations on these exams would amount to irreparable harm by ultimately denying me the ability to engage in the normal life activity of pursuing a legal career under non-discriminatory circumstances.

Even further, in *Baer*, there was no imminency of the alleged harm because the request for injunctive relief was not sought until *three months after* the accommodation request at issue had been denied. <u>Baer</u> at 49. In my case, however, I sought injunctive relief immediately after the Board's final determination on my request for accommodations.

In <u>Bach v. Law Sch. Admission Council, Inc.</u>, 2014 U.S. Dist. LEXIS 124632, at *5-6 (M.D.N.C. Feb. 4, 2014), the plaintiff did not seek a preliminary injunction when he initially filed his lawsuit. Instead, he waited to seek emergency relief until two weeks before the exam, and waited until two days before the exam to seek a TRO. <u>Id</u> at 7. In my case, however, I sought emergency relief immediately after the untimely denial of my timely accommodations request.

Notably, Defendants do not address <u>D'Amico</u>, or <u>Bartlett</u>, which are not only from the Second Circuit, but also the State of New York, and against the same defendants – the New York State Board of Law Examiners. Instead, Defendants rely on inapplicable and distinguishable cases from other jurisdictions.

At the TRO hearing, it was noted by this Court that <u>Bonnette v. D.C. Court of Appeals</u>, 2011 U.S. Dist. LEXIS 75076, 2011 WL 2714896 (D.C. Cir. July 13, 2011) <u>Enyart v. Nat'l Conf. of Bar Examiners, Inc.</u>, and <u>D'Amico</u> involved blind individuals. *See* Transcript of Civil Cause for Telephone Conference, 48:14-50:13, September 8, 2025**.** I would like to respectfully bring to this Court's attention that the definition of a disability under the ADA includes a "physical *or mental* impairment" – and the fact that my disability is a mental disability does not lessen the validity of my need for accommodations. Further, this Court noted that <u>Bonnette</u> had been "actively seeking to work as a lawyer for many years[,]" and that <u>D'Amico</u> had failed the Bar Exam once already. The fact that I have not yet failed the exam without accommodations should

be immaterial to the decision as to whether I am legally entitled to them. The ADA was intended to provide disabled individuals equal access to society with dignity – not require such individuals to suffer the indignity of failing an exam in order to prove that accommodations are necessary.

### B.  There is A Clear and Substantial Likelihood of Success on the Merits

For the reasons discussed in Points I-III, *supra*, I have shown a substantial likelihood of success on the merits of my claims. My claims for prospective injunctive relief fall squarely within the *Ex parte Young* exception, and differ from those set forth in my initial complaint as they are now worded in such a way that they are properly characterized as prospective rather than retrospective. Accordingly, the reasons discussed by this Court in its denial of my TRO application are no longer applicable, in light of the amendments made.

### C.  An Injunction Would be in the Public Interest

Defendants assert that the granting of a preliminary injunction would "treat [me] . . . better than other bar exam applicants," and that this "*could potentially* undermine public confidence in the fair administration of these critical examinations for the licensure of attorneys." (*emphasis added*). As previously stated, Defendants' assertion of this discriminatory, harmful rhetoric rests on hypothetical, conjectural harm, contingent on what "the public" *may think* about the Bar Exam.

This argument easily fails, because my exam score can simply be nullified if I am granted preliminary injunctive relief, and ultimately lose on the merits. Defendant John J. McAlary, Executive Director of BOLE, recently contacted a pro se litigant in a similar matter and notified him of this potential outcome via phone call after he filed a request for a TRO ordering BOLE to grant his request for accommodations. *See T.J.B. v. New York State Board of Law Examiners*, Index No. 902035-25 (N.Y. Sup. Ct. Albany Co. 2025), Document No. 32, Paragraph 33.

Further, the harm that I would suffer – being subject to a professional licensing exam under discriminatory circumstances that do not adequately reflect my capabilities, which ultimately very likely could have the effect of denying me entry into the legal profession, greatly outweighs Defendants' theoretical arguments.

## **CONCLUSION**

Based on the reasons set forth above, I, the plaintiff in this action, respectfully request that this Court deny Defendants' motion to dismiss, and grant my preliminary injunction motion.

CERTIFICATE OF WORD COUNT

In accordance with Local Civil Rule 7.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, the undersigned certifies that this Memorandum of Law in Opposition to Defendants' Motion to Dismiss and in Further Support of my Order to Show Cause, contains 8,335 words, according to Google Docs, excluding the caption, table of contents, signature block, and required certificates.


Dated: Bohemia, New York        By:     /s/ *A.V.*
       November 3, 2025                 A.V.
                                            Plaintiff, *Pro Se*